### IRVINE v. ELLIOTT.

(District Court, D. Delaware. February 24, 1913.)

1. CORPORATIONS (§ 251*)—INSOLVENCY—STOCKHOLDERS—STATUTORY LIABILITY—CONSTITUTIONAL PROVISIONS.

Where a stockholder of an insolvent Ohio railroad company acquired his stock prior to the adoption of a constitutional amendment November 3, 1903, relieving stockholders from the double liability imposed by Ohio Const. 1851, art. 13, § 3, the stockholder's liability was not affected by the amendment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1013–1015; Dec. Dig. § 251.*]

2. CONSTITUTIONAL LAW (§ 34*)—SELF-EXECUTING PROVISIONS—STOCKHOLDERS—DOUBLE LIABILITY.

Ohio Const. 1851, art. 13, § 3, imposing on stockholders a double liability to creditors, was not self-executing, but contemplated legislative action to effect its purpose, which was provided by Ohio Act May 1, 1852 (50 Ohio Laws, p. 296, § 78), as amended by Act April 17, 1854 (52 Ohio Laws, p. 44, § 1), providing that all stockholders of specified corporations and joint-stock companies should be liable to an amount equal to their stock subscribed in addition to the stock to secure creditors of the company.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 34; Dec. Dig. § 34.*]

3. CORPORATIONS (§ 244*)—INSOLVENCY—STOCKHOLDERS' LIABILITY—STATUTES.

Where, at the time defendant acquired stock in an insolvent Ohio railroad company, and when suit was brought by creditors to enforce the

---

same, Ohio Rev. St. 1880, § 3258, was in force, providing that the stockholders of a corporation should be deemed and held liable in addition to their stock in an amount equal to the stock by them subscribed, or otherwise acquired, to the creditors of the corporation, to secure the payment of the corporation's debts and liabilities, defendant assumed and became subject to double liability under such section.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960-977; Dec. Dig. § 244.*]

4. CORPORATIONS (§ 259*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY —NATURE AND ENFORCEMENT.

Double liability of an insolvent Ohio railroad company imposed by Ohio Rev. St. 1880, § 3258, for the enforcement of which provision is made by section 3260, involves equitable procedure, since such liability does not constitute the primary fund for the payment of corporate indebtedness, but is a mere collateral security for the exclusive benefit of creditors, not to be availed of while other means of compelling payment remain open, whether through the collection of unpaid stock subscriptions or the seizure of other corporate assets, nor until ascertainment through an accounting of a basis of assessment against all stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1050, 1052-1067, 2272; Dec. Dig. § 259.*]

5. CORPORATIONS (§ 563*)—STOCKHOLDERS—DOUBLE LIABILITY—ENFORCEMENT —RECEIVERS.

The statutory double liability of stockholders imposed by Ohio Rev. St. 1880, §§ 3258, 3260, being equitable in its nature, was properly enforceable by a receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2280, 2280½; Dec. Dig. § 563.*]

6. CONSTITUTIONAL LAW (§ 156*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY—SUBSEQUENT LEGISLATION.

Double liability of stockholders of an insolvent Ohio railroad company, resident and nonresident, imposed by Ohio Rev. St. 1880, § 3258, in connection with the constitutional provision of 1851, providing for the imposition of such liability, could not be destroyed, lessened, or impaired as to stockholders to whom it had attached by subsequent legislation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 429-436; Dec. Dig. § 156.*]

7. CONSTITUTIONAL LAW (§ 169*)—IMPAIRMENT OF CONTRACT—STOCKHOLDERS. —DOUBLE LIABILITY—ENFORCEMENT.

The double liability of stockholders of an insolvent Ohio railroad company imposed by Ohio Rev. St. § 3258, having attached as to resident as well as nonresident stockholders, it was not material that at that time the Legislature had failed to provide an adequate remedy for its enforcement: the Legislature being entitled to remedy that defect by subsequent legislation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 474, 476, 478-481, 502, 511-514, 522; Dec. Dig. § 169.*]

8. CONSTITUTIONAL LAW (§ 191*) — REMEDIAL LEGISLATION — RETROACTIVE LAWS—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

Ohio Act April 16, 1900 (94 Ohio Laws, p. 359), amending Ohio Rev. St. 1880, § 3260, and section 3258, imposing a double liability on stockholders of certain corporations, in so far as it provided for the enforcement of such liability already accrued against nonresident stockholders, was purely a remedial act, and not in violation of the constitutional provision forbidding the passage of retroactive laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 534; Dec. Dig. § 191.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**9.** CORPORATIONS (§§ 263, 265*)—INSOLVENCY—STOCKHOLDERS' DOUBLE LIA-
BILITY—ENFORCEMENT—ACTION.

An action to enforce double liability of stockholders of an insolvent
Ohio railroad company, imposed by Ohio Rev. St. 1880, §§ 3258, 3260,
can only be prosecuted in Ohio, and all stockholders, resident as well as
nonresident, must be made parties thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 831, 1065,
1101–1125, 2275; Dec. Dig. §§ 263, 265.*]

**10.** JUDGMENT (§ 17*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY—AS-
SESSMENT—DECREE—NONRESIDENTS.

While an assessment to enforce the double liability of stockholders
of an insolvent Ohio railroad company, imposed by Ohio Rev. St. 1880,
§§ 3258, 3260, must necessarily include both resident and nonresident
stockholders, no judgment or decree in personam can be rendered in the
domiciliary proceedings against nonresident stockholders not served with
process, or voluntarily appearing.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec.
Dig. § 17.*]

**11.** CORPORATIONS (§ 268*)—STOCKHOLDERS—DOUBLE LIABILITY—PLEADING—
"OTHER THAN."

An averment in a receiver's suit to recover double liability of stock-
holders of an insolvent Ohio railroad company that the railroad company
was without any property "other than" the double liability of its stock-
holders constituted a sufficient averment that there were no unpaid stock
subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1129, 1131,
1133–1147; Dec. Dig. § 268.*

For other definitions, see Words and Phrases, vol. 6, p. 5104.]

**12.** CORPORATIONS (§ 261*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABIL-
ITY—ENFORCEMENT—CONDITIONS PRECEDENT—RECOVERY OF JUDGMENT.

Where an insolvent Ohio railroad company had no assets out of which
existing debts might be paid, unpaid creditors were not required to re-
duce their claims to judgment and have an execution returned unsatis-
fied, or even to obtain judgment before bringing suit against the corpora-
tion and its stockholders to enforce the stockholder's double liability im-
posed by Ohio Rev. St. 1880, §§ 3258, 3260.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1016–1023,
1068–1075, 2268–2271; Dec. Dig. § 261.*]

**13.** PROCESS (§ 86*) — INSOLVENCY — STOCKHOLDERS — DOUBLE LIABILITY—EN-
FORCEMENT—DOMICILIARY SUIT.

A domiciliary suit to enforce the statutory liability of stockholders of
an insolvent Ohio railroad company imposed by Ohio Rev. St. 1880, §§
3258, 3260, in so far as it related to the making of the assessment against
nonresident stockholders not actually served with process, nor appearing,
was in the nature of a proceeding in rem where service by publication
is sufficient, and, such stockholders being represented by the corporation,
the decree was conclusive on them, so far as it adjudicated the amount
of the indebtedness of the corporation and the necessity of making an
assessment on the stock to the extent and in the amount set forth in
the decree.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 100; Dec. Dig.
§ 86.*]

**14.** CORPORATIONS (§ 262*)—INSOLVENCY—DOUBLE LIABILITY—ENFORCEMENT
—NONRESIDENT STOCKHOLDERS—DEFENSES.

Where a decree enforcing double liability of stockholders of an in-
solvent Ohio railroad company was rendered in a domiciliary action, non-
resident stockholders not appearing nor served with process in such pro-
ceeding when sued in the state of their residence to enforce the judg-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment were entitled to defend on the ground that they were not stockholders or holders of stock in the amount alleged, or that they had claims against the corporation which they were entitled to set off against their assessment, or that they had other defenses personal to themselves.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1076-1083, 2273; Dec. Dig. § 262.*]

15. CORPORATIONS (§ 563*)—INSOLVENCY—STOCKHOLDERS' DOUBLE LIABILITY—NONRESIDENTS—RECEIVERS—AUTHORITY TO SUE.

A receiver appointed by an Ohio state court to enforce statutory double liability of stockholders of an insolvent Ohio railroad company and authorized by statute to sue for and recover assessments levied both within and without the state was not a mere chancery receiver, but had authority to sue a resident of Delaware in the courts of that state to recover the assessment levied on him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2280, 2280½; Dec. Dig. § 563.*]

16. CORPORATIONS (§ 247*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY.

The double liability of stockholders of an insolvent Ohio railroad company, imposed by Ohio Rev. St. 1880, §§ 3258, 3260, is not a corporate asset, but a liability not to the corporation, but to creditors to secure payment of their claims against the corporation, and cannot therefore be released or assigned by the corporation even for the general benefit of its creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 983-997; Dec. Dig. § 247.*]

17. LIMITATION OF ACTIONS (§ 18*)—ACTION OF "DEBT"—STOCKHOLDERS—DOUBLE LIABILITY.

A suit by a foreign receiver of an insolvent Ohio railroad company to enforce a double statutory liability against a stockholder imposed by Ohio Rev. St. 1880, §§ 3258, 3260, in the courts of Delaware, was an action of debt within the three-year statute of limitations, contained in Delaware Rev. Code 1852, amended to 1893, p. 888, c. 123, § 6.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 70-72; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 2. pp. 1864-1886; vol. 8, p. 7628.]

18. LIMITATION OF ACTIONS (§ 6*)—APPLICATION—PENDING PROCEEDINGS.

Ohio Act April 29, 1902 (95 Ohio Laws, p. 312), limiting actions to enforce double liability of stockholders of insolvent Ohio corporations to 18 months after the debt or obligation shall become enforceable, if applicable to a domiciliary suit for the enforcement of such liability, could not apply to a suit pending at the time the statute was enacted.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 16-31; Dec. Dig. § 6.*]

19. CONSTITUTIONAL LAW (§ 171*)—OBLIGATION OF CONTRACT—SHORT STATUTE OF LIMITATIONS.

Contractual liability of stockholders of an insolvent Ohio railroad company having been incurred pursuant to Ohio Rev. St. 1880, § 3258, providing that stockholders shall be liable for an equal amount in addition to their stock liability, it was not within the power of the Legislature wholly to deprive the creditors of all remedy for the enforcement of such liability by reducing the period of limitation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 506; Dec. Dig. § 171.*]

20. LIMITATION OF ACTIONS (§ 2*)—WHAT LAW GOVERNS—LEX FORI.

An action in a court sitting in Delaware by an Ohio receiver to enforce a double liability of a Delaware stockholder of an insolvent Ohio

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

railroad company could not be affected by an Ohio statute of pure limitations affecting the remedy only; the action being governed as to such limitations by the lex fori.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8; Dec. Dig. § 2.*]

21. COURTS (§ 375*)—CONSTRUCTION OF STATE STATUTES—LIMITATIONS.

On any question touching the construction or operation of a statute of limitations of Delaware, a decision of the Supreme Court of that state is conclusive.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. § 375.*]

22. EVIDENCE (§§ 35, 43*)—JUDICIAL NOTICE—LAW AND PRACTICE.

While a federal court sitting in Delaware will take judicial notice of the laws of Ohio, it will not take notice of what may have been done in the course of the practice and procedure of the courts of that state under its statutes.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51, 62–65; Dec. Dig. §§ 35, 43.*]

At Law. Action by Ellsworth C. Irvine, receiver for the benefit of creditors, appointed in an action of F. M. Marriott, Consolidated, against the Columbus, Sandusky & Hocking Railroad Company and others, against Alfred S. Elliott. On demurrer to declaration. Overruled.

Willard Saulsbury and Hugh M. Morris, both of Wilmington, Del., for plaintiff.

Herbert H. Ward, of Wilmington, Del., for defendant.

BRADFORD, District Judge. This is an action of debt brought for the recovery from Alfred S. Elliott of $8,125, being the amount assessed against him by the court of common pleas of Franklin County, Ohio, hereinafter called the court of common pleas, under his alleged statutory double liability as a stockholder of The Columbus, Sandusky and Hocking Railroad Company, hereinafter referred to as the railroad company, an insolvent Ohio corporation, with interest thereon. The case is before the court on a demurrer to the declaration. By stipulation of counsel a paper marked "A" containing a copy of certain decrees in the proceedings in Ohio has been filed, to to have the same force and effect as if set forth in the declaration as originally filed. The declaration in connection with paper "A" so far as material to the consideration of the demurrer alleges in substance that the railroad company was duly incorporated in Ohio in 1895; that on and prior to January 14, 1899, it was indebted to F. M. Marriott in the sum of $1,000 with interest, and to The E. A. Kinsey Company in the sum of $12,860.53, with interest; that the railroad company was on the last named day, and for some time theretofore had been, and now is wholly insolvent and without any property which could be applied to the satisfaction of the above mentioned two debts, other than the liability of its stockholders as hereinafter set forth; that on or about January 14, 1899, Marriott filed in the court of common pleas, a court of competent jurisdiction, a petition in his own behalf as well as in behalf of all the creditors of the rail-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

road company, setting forth that he had on or about October 3, 1898, obtained in that court judgment against the railroad company on his above mentioned claim, which was in full force and unsatisfied, stating the authorized amount of the capital stock of the railroad company, the number and par value of the shares, all of which had been subscribed for and taken, further setting forth that the railroad company October 3, 1898, was and for two years prior thereto had been wholly insolvent, its property and all property rights "then being in the hands of receiver," and the railroad company "at said time did not have, and since the recovery of said judgment had not had, any property from which said judgment could be satisfied"; that Marriott in his petition prayed that the railroad company be compelled to disclose the names of the persons who were then or had been its stockholders, and to set forth the amounts due from them, if any, on their stock, and that they when discovered be made defendants in that cause, and further that the names of the creditors of the railroad company be ascertained "together with the amounts due each, in such manner as the court might direct, and that all stockholders in arrears for subscription for said stock be required to pay the balance due from them, and that each stockholder be required to pay his ratable proportion of any deficit remaining after the application of the said assets to said debts"; that on the filing of the above petition process issued and was served on the railroad company which duly appeared by its authorized attorney; that thereafter, December 22, 1899, The E. A. Kinsey Company filed in the same court against the railroad company and its stockholders a petition, hereinafter called the Kinsey petition, in behalf of itself and all other creditors of the railroad company, (the Marriott and the Kinsey petitions having the same general purpose), alleging, among other things, that on or about June 2, 1897, in a suit in the circuit court of the United States for the southern district of Ohio between The Mercantile Trust Company of New York, as trustee, and the railroad company, a receiver was appointed of all the assets and property of the latter company, and further alleging that the railroad company "had ceased to do business and had no property of any kind with which to do business," and "it was necessary for the payment of the creditors of said company that the stockholders thereof should be assessed under the laws of the State of Ohio the full amount of their statutory liability," and praying for an ascertainment of the total debts and liabilities of the railroad company, the amount of each and when contracted, and of the "number of shares of stock held by each of said stockholders and the time during which each of said stockholders respectively owned and held said stock," and of the "amount of the assessment necessary and proper to be made to satisfy the said debts of said railroad company," and praying further that "after such ascertainment of said debts and liabilities, stockholders and assessments a receiver should be appointed to collect the said assessments and to distribute the same among the creditors of said company as the same should be entitled thereto," and that the petitioner should have "all other and further relief as the circumstances of the case might require," etc.; that the

railroad company was served with process and duly appeared by its authorized attorney; that the court of common pleas March 31, 1902, found and determined that the two proceedings instituted by the Marriott and Kinsey petitions had the same object, and ordered and adjudged that the same be consolidated and thereafter conducted under the name of "Case No. 39,457, F. M. Marriott, Consolidated, Plaintiff, vs. The Columbus, Sandusky & Hocking Railroad Company, et al., Defendants"; that the above order and judgment was not appealed from and remains in full force; that in the consolidated cause the defendant herein and all the other stockholders of the railroad company were made parties defendant, and all the defendants residing in Ohio were duly served with summons and all defendants not residing in Ohio, including Elliott, were duly served by publication in accordance with the statute of Ohio in such case made and provided; that on or about June 14, 1902, the court of common pleas referred the consolidated cause to one of the master commissioners of that court and ordered him "to proceed according to law to determine what persons, firms and corporations, (other than those already parties thereto) should be made parties therein, to ascertain the address and residence of each of such stockholders in the defendant corporation, The Columbus, Sandusky & Hocking Railroad Company, to determine what transfers of stock had been made, and the dates of each, to determine the solvency or insolvency of the various stockholders, the amount of stock held by each, the indebtedness of said corporation, the names and addresses of its creditors, in such manner as is provided by law, and to do all other things necessary, proper and lawful to enforce the liabilities of the stockholders of said defendant corporation, and to report to said court his findings of fact and his conclusions of law thereon"; that in obedience to the said order and judgment of the court of common pleas the said master commissioner proceeded to carry out all the directions of said court, and thereafter, March 17, 1905, duly filed his report containing his conclusions of law and findings of fact in accordance with the said order and decree; that thereafter the consolidated cause came on to be heard by the court of common pleas upon the report of the master commissioner and the exceptions thereto and a motion to confirm the same, and thereafter, July 17, 1905, that court by a proper and final order, judgment and decree confirmed the said report and decreed, among other things, that the shares of stock of the railroad company were of the par value of $100 each, and further, that it at the time of filing the Marriott and Kinsey petitions in the court of common pleas and on July 17, 1905, was insolvent and had no assets of any kind with which to pay its debts, and further, that the unpaid valid and subsisting debts of the railroad company as found in the report of the master commissioner amounted with interest until March 1, 1905, to $706,251.55, and by reason of the amount of that indebtedness, the costs of the consolidated cause and the insolvency of the railroad company, it was necessary to make an assessment against each of its stockholders amounting to 25% of the par value of the shares held and owned by each such stockholder; that the court of

common pleas did in and by the order and decree of July 17, 1905, find and adjudge that Elliott was then the owner of 325 shares of the said stock and there was then due from him as such stockholder to the creditors $8,125; that at the time of filing the Marriott and Kinsey petitions Elliott was a stockholder in the railroad company and was the owner and holder of the number of shares above mentioned: that the court of common pleas by its said decree appointed Ellsworth C. Irvine, plaintiff herein, receiver in the consolidated cause under the statute of Ohio in such case made and provided, and authorized, directed and empowered him to collect and enforce by suit or by such action brought in his own name as receiver as might be necessary or otherwise "in any jurisdiction and before any court of competent jurisdiction" all assessments ordered and made or amounts due or found due by the said decree from such stockholders, including the amount found due from Elliott, and make proper distribution of the amount so recovered under the further orders of the court; that the said decree of July 17, 1905, is in full force and effect and no appeal therefrom is pending; that within the proper time as allowed by the laws of Ohio an appeal was taken in the consolidated cause from that decree to the circuit court for Franklin county and was dismissed by that court; that the appellants "within the proper time" allowed by the laws of Ohio prosecuted the said proceedings further in error to the Supreme Court of Ohio which, April 30, 1907, affirmed the judgment of the circuit court dismissing the appeal; that on or about December 22, 1906, the court of common pleas made a further final order and decree in the consolidated cause supplemental to the decree of July 17, 1905, by which supplemental order and decree Irvine, the receiver, was vested with the title to all the goods, chattels, property and assets, real and personal, of the railroad company, wherever situated or held, and was thereby given the right and power, among other things, to collect by suit or otherwise, in his own name as such receiver, any debts due to it, and to recover any property belonging to it, and to do any and all acts which it could do or could have done to recover any debts due to it or property belonging to it; and was thereby further authorized, directed and empowered to proceed to collect and enforce by suit, or by such action brought in his own name as such receiver, as might be necessary, in any other jurisdiction and in any court of competent jurisdiction "all assessments and judgments ordered and made, or amounts due or found due herein, against each and all persons, estates, personal representatives, firms, or corporations who have been made parties defendant herein and served by publication or otherwise, or who are parties defendant, or who have been found by the court to be stockholders in said The Columbus, Sandusky & Hocking Railroad Company and liable to such assessment or judgment, all according to the statute in such case made and provided"; that the decree of July 17, 1905, and the supplemental decree of December 22, 1906, are final and unreversed and no appeal therefrom is pending; that the plaintiff in the consolidated cause within the time allowed by the laws of Ohio duly took and perfected an appeal from the supplemental decree of De-

cember 22, 1906, to the circuit court for Franklin county, which refused, on motion made for that purpose, to dismiss such appeal, but by an order or decree made December 7, 1907, in effect reversed the decree appealed from, and assessed against all of the defendant's stockholders including Elliott 50% of the par value of the capital stock of the railroad company held by them; that some of the defendants in the consolidated cause thereupon duly prosecuted a proceeding in error to the Supreme Court of Ohio, giving a supersedeas bond under the laws of that state; that the Supreme Court May 11, 1909, reversed the decree of the circuit court of December 7, 1907, and sustained and affirmed the decrees of the court of common pleas of July 17, 1905, and December 22, 1906, respectively, and found and adjudged that the judgments, decrees and assessments and each of them made and entered in the consolidated cause in the court of common pleas July 17, 1905, and December 22, 1906, respectively, were final and conclusive, and that they and each of them "now stand unreversed and unmodified and are in full force and virtue in law"; that all the above mentioned appeals and proceedings upon writs of error were taken in due time as required by law, and upon proper bonds being filed as required by law, and as hereinabove referred to; that the effect of said appeals and proceedings on writs of error under and by virtue of the laws of Ohio was to suspend the operation and effect of the said decrees of the court of common pleas; that by reason of said appeals and proceedings by writ of error there was no time during which Irvine could lawfully proceed as such receiver, under and by virtue of the decrees of the court of common pleas, to enforce the collection of the amounts so assessed against the stockholders of said company, defendants in the consolidated cause, until the making of the order and decree of the Supreme Court. May 11, 1909; that the court of common pleas made a further order and decree May 28, 1909, that Irvine as receiver be invested with the title and ownership in trust for the creditors of the railroad company of and to all and singular its property and assets and the rights of its creditors against its stockholders wherever situated or held, including the right to the sum of money found due from and assessed against Elliott as above mentioned, and empowering, authorizing and directing Irvine, receiver as aforesaid, to institute and prosecute in his own name in pursuance of the statute in such case made and provided, such action, actions or other proceedings against the defendants in the consolidated cause and the stockholders of the railroad company, or any of them, in any court of competent jurisdiction in Ohio or elsewhere as he might deem necessary or proper for the recovery of the amount due from such defendant or defendants and from the stockholders of the railroad company as thereinbefore or thereafter found and adjudged by the court of common pleas, and further authorizing and empowering him to commence and prosecute such action or actions against such defendants and stockholders, or any of them, whether residing in Ohio or elsewhere, and whether served with process in such proceedings in the court of common pleas by publication or otherwise, and to commence and prosecute such action or actions

against any such defendants or stockholders who were during the pendency of the action in the court of common pleas non-residents of Ohio whether personally served with process or not in such action; that the decree of May 28, 1909, is final and unreversed and in full force and effect and no appeal therefrom is pending; that by virtue of the constitution and statutes of Ohio and the decrees of the court of common pleas and Supreme Court of Ohio above mentioned, the plaintiff Irvine, receiver, became invested with the title and ownership in trust for the creditors of the railroad company of all its assets and the rights of its creditors against its stockholders, wherever situated or held, including the several sums found by the court of common pleas to be due from the stockholders of the railroad company, and among them the sum adjudged and decreed to be due from Elliott as above mentioned, and was authorized, empowered and directed to collect the same by suit in any court of competent jurisdiction whether in Ohio or elsewhere, in his name as such receiver or otherwise; that Irvine duly qualified and entered upon the discharge of his duties as receiver and is duly qualified as receiver for the purposes aforesaid; that at and prior to the time of the incorporation of the railroad company and when Elliott became a stockholder thereof and when the Marriott and Kinsey suits were commenced in the court of common pleas and thereafter, the constitution of Ohio provided that "dues from corporations shall be secured, by such individual liability of the stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock"; that during all of said time the statutes provided that "the stockholders of a corporation which may be hereafter formed, and such stockholders as are now liable under former statutes, shall be deemed and held liable, in addition to their stock, in an amount equal to the stock by them subscribed, or otherwise acquired, to the creditors of the corporation, to secure the payment of the debts and liabilities of the corporation"; that under the above mentioned constitutional and legislative provisions and the judgments and decrees of the court of common pleas the statutory liability of the defendant here passed to and is now vested in the plaintiff as the representative of the creditors of the railroad company, and the plaintiff now holds title thereto as a trust fund for their benefit; that at and prior to the time of the filing of the Marriott and Kinsey petitions in the court of common pleas Elliott was and has ever since continued to be the owner and holder of the said 325 shares of the capital stock of the railroad company; that the court of common pleas duly found, adjudged and decreed in the consolidated cause that he was duly served with process in such cause by publication, pursuant to the laws of Ohio in such case made and provided, being section 3260 of the revised statutes of Ohio, as amended April 16, 1900 (94 Ohio Laws, p. 359); that the plaintiff by virtue of the constitution and laws of Ohio and his appointment and qualification as receiver in the consolidated cause became and now is the representative of the creditors of the railroad

company and is "vested with the title to all and singular the rights of action possessed by said railroad company and its creditors, including the right of action to recover the indebtedness of said stockholders and the indebtedness of this defendant to the creditors of said company, as hereinabove alleged, and is duly authorized to maintain this action in this court against the defendant herein to recover the sum aforesaid due from and assessed against this defendant" as above mentioned; and that the plaintiff has demanded and been refused payment by the defendant, etc.

The demurrer assigns nine grounds, as follows:

"1. That said declaration is uncertain and insufficient in that it does not aver on the twelfth page of the said declaration at what date an appeal was taken in said cause in the said declaration mentioned, from said decree dated July 17th, 1905, or when said appeal was dismissed by said circuit court for Franklin County, State of Ohio, nor by whom said appeal was so taken and prosecuted.

2. That said declaration is uncertain and insufficient in that it is not stated therein on pages 12 and 13 of said declaration at what date said plaintiff in the cause mentioned in said declaration did take an appeal from said decree dated December 22nd, 1906, to the circuit court for Franklin County and State of Ohio, or when said plaintiff filed an appeal bond as required by the laws of the State of Ohio.

3. That said declaration is uncertain and insufficient in that it is not stated therein on page 13 of said declaration what defendants in said consolidated cause mentioned in said declaration did prosecute said mentioned proceeding on writ of error to said Supreme Court of said State of Ohio, upon which the said mentioned order of the Supreme Court of the State of Ohio of May 11th, 1909, was entered.

4. That it appears by said declaration and by the record in said cause that said plaintiff is barred by the statute of limitations of the State of Ohio against the maintaining of this action, in that suit against said defendant was not brought within eighteen months from the accrual of the cause of action mentioned in said declaration.

5. That it appears by said declaration and the record in said cause that said plaintiff is barred from the maintaining of this action by the statute of limitations of the State of Ohio, in that this suit was not brought within six years from the accrual of the supposed liability or cause of action against this defendant.

6. That it appears by said declaration and the record in said cause that said plaintiff is barred from maintaining this suit by the statute of limitations of the State of Delaware, in that this action was not brought within three years from the accrual of the cause of action against this defendant.

7. That it appears by said declaration and the record in said cause that the statutory procedure of the State of Ohio upon which this action is based was not complied with, and that thereby no cause of action exists against this defendant.

8. That said plaintiff hath no right as a receiver appointed by the courts of Ohio to maintain this action in the circuit court of the United States for the District of Delaware.

9. That the statutory procedure of Ohio is void and legally ineffective as to stockholders who were not personally served with process."

The counsel for the defendant in open court at the hearing and also in his brief of argument said that:

"Of the grounds specially set up by said demurrer, the fifth, seventh and ninth are not insisted upon and no judgment of the court is asked thereon, the same being abandoned so far as this demurrer is concerned."

The defendant thus practically, though impliedly, admits for the purpose of disposing of the demurrer, first, that the Ohio six year limitation is not applicable to this case; second, that the statutory procedure of Ohio upon which this action is based was complied with; and, third, that such statutory procedure is valid and legally effective as to stockholders not personally served with process. Of the remaining causes of demurrer five, namely, Nos. 1, 2, 3, 4 and 6, directly or indirectly involve questions touching the effect upon this action of statutes of limitation or lapse of time, and number 8 challenges the right of the plaintiff as a receiver appointed in Ohio to maintain an action in Delaware to enforce the statutory or double liability of a stockholder of an Ohio corporation. This last cause of demurrer may conveniently be considered first.

[1] Section 3 of article 13 of the Ohio constitution of 1851 provided:

"Dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, and to a further sum, at least equal in amount to such stock."

This provision continued in force until after the defendant acquired his shares of the capital stock of the railroad company and after the consolidation of the Marriott and Kinsey petitions as above mentioned. This constitutional provision was amended November 3, 1903, so as to read:

"Sec. 3. Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

[2] It is unnecessary, however, in this immediate connection to dwell upon the latter constitutional provision, for the plaintiff's right to maintain this action, if it exists, must rest upon the constitutional provision of 1851 and the legislation enacted thereunder. That provision contemplates legislative action to effect its purpose, and under it the legislature of Ohio by act of May 1, 1852 (50 Ohio Laws, p. 296, § 78), amended April 17, 1854 (52 Ohio Laws, p. 44, § 1), provided, among other things:

"All stockholders of any railroad, turnpike, or plank-road, magnetic telegraph, or bridge company, or any joint stock company, organized under the provisions of this act, shall be deemed and held liable to an amount equal to their stock subscribed, in addition to said stock for the purpose of securing the creditors of such company," etc.

Of this legislative provision the Supreme Court of Ohio in Wright v. McCormack, 17 Ohio St. 87, said:

"The statute adopts the minimum liability allowable by the Constitution, and was intended to make the constitutional provision effective."

[3] And later, section 3258 of the revised statutes of Ohio, in force from 1880 to April 29, 1902, provided:

"The stockholders of a corporation which may be hereafter formed, and such stockholders as are now liable under former statutes, shall be deemed and held liable, in addition to their stock, in an amount equal to the stock

by them subscribed, or otherwise acquired, to the creditors of the corporation, to secure the payment of the debts and liabilities of the corporation."

This section was in force at the time of and prior to and after the incorporation of the railroad company and the acquisition by the defendant of his stock therein and the commencement of the Marriott and Kinsey suits, and consequently the defendant. upon the acquisition of his stock, assumed and became subject to the statutory double liability. Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301. It was a liability imposed upon all the stockholders.

Section 3260 of the revised statutes, dealing with the subject of remedial procedure for the enforcement of the double liability, was as follows:

"Sec. 3260. A stockholder or creditor may enforce such liability by action jointly against all the holders or owners of stock, which action shall be for the benefit of all the creditors of the corporation and against all persons liable as stockholders; and in such action there shall be found and determined the amount payable by each person liable as stockholder on all the indebtedness of the corporation, in which adjudication no costs shall be taxed to nor collected of any stockholder to an amount which, together with the amount to be paid on said indebtedness, will exceed the amount of the stock on which he is liable."

This section remained in force from 1880 until March 22, 1894 (91 Ohio Laws, p. 88), when it was amended by the addition of a proviso, which, so far as may be pertinent to this case, was as follows:

"Provided, that in any such action the plaintiff may file in the court a sworn statement that a stockholder or stockholders or the legal representatives of a deceased stockholder have not been summoned, giving their residence if known, and that it is impracticable to secure service of summons upon such stockholder or such legal representatives of a stockholder, and remitting from the claim of the plaintiff or of other creditors consenting, so much as may be found payable by such stockholders not served with summons except those who may be insolvent or non-resident of the state, and judgment shall be rendered against the stockholders who have been served with summons, for the pro rata amount for which they would be liable if all solvent stockholders resident of the state were served with summons," etc.

[4] The court of common pleas of Ohio is vested with common law and chancery jurisdiction. Under the foregoing legislation the enforcement there of the statutory double liability of stockholders of a corporation of that state involved equitable procedure. This resulted from the essential nature of such liability. It did not constitute a primary fund or resource for the payment of the corporate indebtedness, but was only a collateral security for the exclusive benefit of the creditors and not to be availed of while other means of compelling payment remained open, whether through the collection of unpaid stock subscriptions or the seizure and sale of other corporate assets, nor until after the ascertainment, through an account, of a proper and equitable basis for an assessment against all the stockholders respectively. In Zieverink v. Kemper, 50 Ohio St. 208, 34 N. E. 250, the court, referring to the procedure under section 3260 before its amendment to enforce the double liability said:

"We think there is abundant authority in the statutes for the appointment of a receiver in an action to collect the statutory liability of stockholders,

and that such is the usual and better practice. But the judgment against the several stockholders must be rendered in the original action brought by a creditor or stockholder as provided in section 3260 revised statutes. Such an action is equitable in its nature, and the statutory liability of the stockholders is a trust fund inuring to the equal benefit of all the creditors of the corporation, and this fund is made up from different amounts of money, to be collected from many different stockholders, and to be distributed among many creditors, and no one creditor is more interested in the collection than another. As no preference can be obtained by diligence, no one would be specially interested in prosecuting suits for the equal benefit of himself and others; and in such cases, it is the usages of equity to appoint a receiver to collect and distribute the fund under the order of the court, for the equal benefit of all the creditors. The fact that the right of action is given by statute makes it none the less an equitable action, and being an equitable action, in its nature, requiring the service of a receiver, it is one of those in which receivers have heretofore been appointed by the usages of equity as provided in section 5587 of the revised statutes."

In Younglove v. Lime Co., 49 Ohio St. 663, 33 N. E. 234, the court said:

"The action is an equitable one, in which all the creditors and stockholders must be parties, and the court may withhold final judgment until the exact amount each stockholder should pay can be ascertained, or so mould its decree as to require the several stockholders to pay their proper proportion of the liabilities remaining after the application of all the assets of the corporation toward their satisfaction, and retain control over the cause and the parties until their ultimate rights shall be determined and adjusted."

In Kulp v. Fleming, 65 Ohio St. 321, 62 N. E. 334, 87 Am. St. Rep. 611, the court said:

"Our method of enforcing the liability of stockholders is by a proceeding in the nature of a suit in equity which contemplates the bringing in of the corporation, of all the creditors, and of all the stockholders, and a decree which will adjust and finally settle the rights and liabilities of the parties."

[5-7] The foregoing cases suffice to show the equitable nature of the procedure to enforce the stockholders' statutory double liability prior to the filing of the Marriott and Kinsey petitions, and that it was proper and usual to appoint receivers to collect the amount due under such liability. Unless under very exceptional circumstances, not disclosed here, the insolvent corporation was made a party defendant with the stockholders. Zieverink v. Kemper, 50 Ohio St. 208, 34 N. E. 250, was decided before section 3260 was amended by the addition of the above quoted proviso; and in that case the court declared that in the procedure under that section "the judgment against the several stockholders must be rendered in the original action brought by a creditor or stockholder" as therein provided. And that section as amended March 22, 1894, did not authorize or contemplate the enforcement of the double liability against stockholders of insolvent corporations who from non-residence or other cause could not be served with process unless voluntarily appearing. It did not authorize, nor was there any other legislative act then in force authorizing, the appointment of a receiver to bring suit outside of Ohio for the collection of any assessment made against non-resident stockholders of Ohio corporations under their statutory or double liability. Nor did either the Marriott petition or the Kinsey petition pray for the appointment of such a

receiver. The former petition did not allude to a receiver. The Kinsey petition, indeed, prayed that after the "ascertainment of said debts and liabilities, stockholders and assessments a receiver should be appointed to collect the said assessments and to distribute the same." But in view of the provisions of section 3260 as amended and of the practice to appoint receivers to collect such assessments only within the limits of Ohio, it is to be presumed that the petitioner did not contemplate the appointment of a receiver with less restricted power. A peculiar condition of things existed at and before the time of the acquisition by the defendant of his stock, the filing of the Marriott and Kinsey petitions, and thereafter and until section 3260 was further amended and supplemented April 16, 1900. The constitutional provision of 1851 was still in force declaring that dues from corporations "shall be secured by such individual liability of the stockholders" but "in all cases, each stockholder shall be liable," etc. And section 3258 of the revised statutes was still in force providing generally and without exception that "the stockholders of a corporation  *  *  *  shall be deemed and held liable," etc. Neither the constitutional provision nor the legislation enacted thereunder for the creation of the double liability discriminated between resident and non-resident stockholders. And this is accentuated by the fact that section 3260, both before and after its amendment March 22, 1894, required an "action jointly against all the holders or owners of stock." The double liability of all the stockholders, non-resident as well as resident, clearly was established by section 3258 of the revised statutes in connection with the constitutional provision of 1851, and was not and could not under the constitution of the United States be destroyed, lessened or impaired in the case of Elliott and others who, by their acquisition of stock, contractually assumed and became subject to the double liability for the benefit of all creditors of the railroad company. The legislature failed to provide at any time prior to April 16, 1900, an adequate remedy for its enforcement against those stockholders who were non-residents. That such a remedy could be provided by the legislature for the enforcement of the existing double liability of non-resident stockholders who had acquired their stock before the creation of such remedy but while the constitutional and statutory provisions creating the double liability were in force is established by the cases. In Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, the court had under consideration a statute of Minnesota amending a former act relative to the double liability of stockholders of corporations of that state, and providing a remedy for its enforcement in other states, which could not be effected before the passage of the amendatory act. The court speaking with reference to the contract growing out of the purchase of stock said:

"The obligation of this contract binds the stockholder to pay to the creditors of the corporation an amount sufficient to pay the debts of the corporation which its assets will not pay, up to an amount equal to the stock held by each shareholder. That is his contract, and the duty which the statute imposes, and that is his obligation. Any statute which took away the benefit of such contract or obligation would be void as to the creditor, and any attempt to increase the obligation beyond that incurred by the stockholder

would fall within the prohibition of the constitution. But there was nothing in the laws of Minnesota undertaking to make effectual the constitutional provision to which we have referred, preventing the legislature from giving additional remedies to make the obligation of the stockholder effectual, so long as his original undertaking was not enlarged. There is a broad distinction between laws impairing the obligation of contracts and those which simply undertake to give a more efficient remedy to enforce a contract already made. * * * The liability arising under the constitution of Minnesota was such that legislation was appropriate to make it effectual. We can find nothing in the fact that one legislature has passed an act which would conclude a subsequent law-making body of equal power from passing new and additional measures to make the remedy more effectual. That the first act did not accomplish its purpose is evident. Under it stockholders in another State, who could not be reached by personal service, were immune from liability and the entire burden was cast upon local stockholders. There was no provision for a receiver or assignee beginning action outside the State, and it was held by this court in Hale v. Allinson, supra [188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380], that a chancery receiver was powerless to enforce the rights of creditors beyond the borders of the State. In this condition of affairs the State of Minnesota has undertaken to provide a proceeding for the settlement of insolvent corporations which shall ascertain the assets of the corporation, the extent of the indebtedness of the corporation, the amount to which it is necessary, if at all, to call upon the stockholders' liability. It is obviously an act intended to make effectual the liability which is incurred by stockholders under the constitution of the State, and it ought not to be rendered nugatory unless substantial objection exists against its enforcement. It operates equally upon all stockholders at home and abroad and assesses all by a uniform rule. * * * By becoming a member of a Minnesota corporation, and assuming the liability attaching to such membership, he became subject to such regulations as the State might lawfully make to render the liability effectual."

The above doctrine was approved and enforced in Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749. The Supreme Court of Ohio has decided that a retrospective statute of a purely remedial nature is not repugnant to the provision of the Ohio constitution forbidding the passage of retroactive laws. Gager v. Prout, 48 Ohio St. 89, 26 N. E. 1013.

[8] Largely for the purpose of affording an adequate remedy for the enforcement of the stockholders' double liability under the constitution of 1851 and section 3258, section 3260 was further amended and supplemented April 16, 1900, so as to read as follows:

"Sec. 3260. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of a corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any common pleas court which possesses jurisdiction to enforce such liability.

Sec. 3260a. The court shall proceed thereon as in other cases, and, when necessary, shall cause an account to be taken of the property and obligations due to and from such corporations, and may appoint one or more receivers.

Sec. 3260b. If, on the coming in of the answer or upon the taking of such account, it appears that such corporation is insolvent, and has not sufficient property or effects to satisfy such creditor, the court may proceed to ascertain the respective liabilities of the directors, officers and stockholders and enforce the same by its judgment, as in other cases.

Sec. 3260c. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall give notice to non-resident stockhold-

ers as provided in sections 5048, 5049, 5050, 5051 or 5052 of the revised statutes, and shall first proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

Sec. 3260d. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases. The court may authorize and direct the receiver to prosecute such action in his own name as receiver, as may be necessary, in other jurisdictions to collect the amount found due from any officer or stockholder.

Sec. 3260e. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court whenever it appears necessary or proper, may order notice to be published, in such manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment.

Sec. 3260f. Upon a final judgment in any such action against an insolvent corporation, the court shall cause a just and fair distribution of the property and assets of such corporation or the proceeds thereof to be made among its creditors."

The above amendatory and supplemental act provided that "this act shall apply to pending actions, and shall take effect and be enforced from and after its passage." While it is possible that the hypercritical may object to some of the phraseology in this act, the meaning of its provisions when read in the light of the earlier statutes in pari materia is plain and unmistakable. It did not undertake to create any new liability or to change the general nature of the suit for the enforcement of the double liability, but to provide an efficient remedy for its enforcement against non-resident stockholders. Section 3260 provides for a proceeding by a creditor in the court of common pleas to enforce the statutory liability. Section 3260a directs the court, when necessary, to cause an account to be taken of the corporate assets and liabilities and authorizes the appointment of a receiver. As has appeared the Supreme Court of Ohio had already recognized the power of the court of common pleas to appoint receivers for the enforcement within that state of the double liability. Section 3260b provides in effect that where on the coming in of the answer of the corporation or upon the taking of such account it appears that the corporation is insolvent, and has not sufficient property to satisfy the claims of creditors on behalf of whom the plaintiff creditor sues, the court may ascertain the respective liabilities of the stockholders and enforce the same by its judgment or decree. Section 3260c provides in effect that in all cases in which the stockholders are made parties to an action for the enforcement of the double liability, where a judgment or decree is rendered against the corporation, if its property is not sufficient to discharge its debts, the court shall give notice to non-resident stockholders pursuant to the sections of the revised statutes therein specified, and shall "first proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is

necessary to satisfy the debts of the company." And section 3260d provides in effect that if, notwithstanding the payment by or collection from the stockholders of the amount remaining unpaid on their stock, the corporate debts still continue unsatisfied, the court shall ascertain and adjust the amount due under the statutory double liability of the respective stockholders, adjudge the amount payable by each, and enforce the judgment or decree; and to that end may "authorize and direct the receiver" to prosecute an action in his own name as receiver, as may be necessary, in any other state to collect the amount found due from a stockholder therein.

[9, 10] In an action for the assessment against stockholders of an Ohio corporation of the amounts due from them under their double liability and for the enforcement of such liability, not only must all the stockholders be made parties, but further, the proceedings must be prosecuted in Ohio. Middletown Bank v. Railway Company, 197 U. S. 394, 25 Sup. Ct. 462. 49 L. Ed. 803. While, however, an assessment made in such action necessarily includes both non-resident and resident stockholders, no valid and binding judgment or decree in personam can be rendered in the domiciliary proceedings against non-resident stockholders not served with process nor voluntarily appearing; for it is elementary law that service by publication will not alone support such a judgment or decree. A decree in the domiciliary suit in Ohio finally ascertaining the amount necessary to be raised from the stockholders for the satisfaction of the corporate indebtedness through the enforcement of their double liability, and assessing against them severally the amount appearing to be due from them respectively under such liability, while it can be enforced by judgments and executions in the domiciliary proceedings against stockholders over whom jurisdiction in personam has been obtained, cannot authorize or support a final judgment or decree in personam in the domiciliary suit, to be enforced by execution or attachment against non-resident stockholders, not served with process nor appearing in the domiciliary proceedings. Irvine v. Bankard (C. C.) 181 Fed. 206. Affirmed 184 Fed. 986, 106 C. C. A. 664. The proceedings on the Marriott and Kinsey petitions both before and after their consolidation appear from the facts admitted by the demurrer to have conformed in their several stages to the law and practice existing at the time in Ohio as declared by the Supreme Court of that state.

[11, 12] The Marriott claim against the railroad company had been reduced to judgment before the filing of the Marriott petition for the enforcement of the double liability. The Kinsey claim, however, had not been reduced to judgment before the filing of the Kinsey petition for the same purpose. But the railroad company at the time of the filing of each of these petitions was wholly insolvent and without property of any kind applicable to the above claims or either of them, and had been so insolvent and without assets for a period antedating the recovery of judgment by Marriott on his claim October 3, 1898. It also appears that at the last named date the property and all property rights of the railroad company were in the hands of a receiver. It does not appear, however, what the nature and scope

of the receivership were, or that it continued until the filing of either of the above petitions. The averment to the effect that the railroad company was without any property "other than" the double liability of its stockholders amounts to an assertion that there were no unpaid stock subscriptions. For such unpaid subscriptions constitute corporate assets. Further, it appears from paper "A," made part of the declaration, that it was found by the court in the consolidated suit that "prior to the commencement of this action, and prior to the insolvency of The Columbus, Sandusky & Hocking Railroad Company, all of the stock of the said railroad company had been fully paid up and that there is now nothing due and remaining unpaid to said company on the shares of stock held by any of the stockholders of said company on account of subscriptions to the capital stock thereof." Under these circumstances the Supreme Court of Ohio has decided that it is not necessary that the creditor of a corporation should reduce his claim to judgment and have an execution returned unsatisfied, or even obtain judgment, before bringing suit against the corporation and its stockholders for the enforcement of their double liability. Younglove v. Lime Co., 49 Ohio St. 663, 33 N. E. 234; Morgan v. Lewis, 46 Ohio St. 1, 17 N. E. 558; Barrick v. Gifford, 47 Ohio St. 180, 24 N. E. 259, 21 Am. St. Rep. 798. In the last named case it was said, "the law does not require the doing of a vain thing." But, as before stated, it does not appear from the facts admitted on demurrer that the railroad company had any property in the hands of a receiver at the time of filing the Marriott or the Kinsey petition or that it then had any property or was represented by a receiver. The proceedings in the consolidated cause on which the decree of July 17, 1905, was based conformed generally to the provisions of the constitution and statutes of Ohio applicable to the case and to the procedure and practice of the courts of that state, as appears from the declaration in connection with paper "A." The Marriott and Kinsey petitions having been consolidated in March, 1902, all the defendant stockholders residing in Ohio were duly served with process, and all the defendant stockholders not residing there, including Elliott, were served by publication pursuant to the statute in that behalf. The consolidated cause was referred in June, 1902, to a master commissioner who pursuant to the order of reference proceeded to carry out all the directions contained therein, including the ascertainment of the names and addresses of the stockholders of the railroad company, other than those already parties to the case, who should be made defendants therein, what transfers of stock had been made and when, the solvency or insolvency of the various stockholders, the amount of stock held by each, the indebtedness of the railroad company, with the names and addresses of its creditors, and all other things necessary to enforce the liability of the stockholders. The master commissioner filed his report March 17, 1905, which was confirmed by the court of common pleas July 17, 1905. In that confirmatory decree the court from the evidence and report of the commissioner found it necessary to make and did make an assessment of 25% of the par value of the stock held by each and all of the defendant stockholders

in the consolidated cause; and ordered, adjudged and decreed that the stockholders within the jurisdiction of the court and served with process or who had appeared in that cause were severally liable for such assessment upon the stock owned by them respectively, and that the plaintiff in his own behalf and in behalf of all other creditors of the railroad company recover from each and every of such defendant stockholders the amount of the assessment made against such stockholder, and directed that in default of payment of the assessment by August 20, 1905, execution should issue. Here subject to reversal or modification on appeal in the domiciliary proceedings was a final binding judgment or decree in personam. But in the case of stockholders who were non-residents of Ohio and only served by publication, (Elliott being one of them) this decree did not direct the entry of judgment for the recovery of the amount of the assessment; but made the assessment and authorized and empowered, as far as it could, Irvine as receiver to sue for and collect the same, in the following words:

"And said receiver is hereby further authorized, directed and empowered to proceed to collect and enforce by suit or by such action filed in his own name as receiver as may be necessary or otherwise in any jurisdiction and before any court of competent jurisdiction all assessments ordered and made or amounts due or found due herein against each and all persons, estates, personal representatives, firms or corporations who have been made parties defendant herein and served by publication or otherwise, or who are parties defendant, or who have been found by the court to be stockholders in said The Columbus, Sandusky & Hocking Railroad Company and liable to such assessment, all according to the statute in such case made and provided."

[13] That the assessment made as above stated against stockholders of the railroad company, whether non-resident or resident in Ohio was valid hardly can be questioned. It appears to have been based upon a lawful and proper ascertainment of the facts necessary to authorize and support it. And as before stated, counsel for the defendant through his abandonment of the seventh ground of demurrer virtually admitted that the statutory procedure in Ohio upon which the present action was based was duly complied with. But what is of controlling importance the Supreme Court of Ohio in the decree in the domiciliary suit made May 11, 1909, found and adjudged that the decree of the court of common pleas of July 17, 1905, and the supplemental decree of the same court made December 22, 1906, respectively, "are final and conclusive in said case and that from said judgments, decrees and assessments no valid or lawful appeal or proceeding in error was ever prosecuted, and that said judgments, decrees and assessments and each of them, now stand unreversed and unmodified and are in full force and virtue in law." The railroad company was made a defendant and served with process and it duly appeared in the domiciliary proceedings. The non-resident stockholders including Elliott were joined as defendants with the railroad company and resident stockholders and constructively served by publication pursuant to the laws of Ohio. The domiciliary suit, so far as it related to the making of the assessment against non-resident stockholders not actually served with process nor appearing, was in the nature of a

proceeding in rem, where service by publication is sufficient. Shipman v. Treadwell, 200 N. Y. 472, 93 N. E. 1104. And in that suit such non-resident stockholders were represented by the company; and the decree ordering the assessment, while not binding them as a judgment or decree in personam rendered after personal service of process, was conclusive upon them as to the amount of the indebtedness or liability of the company and the necessity of making an assessment upon the stock to the extent and in the amount set forth in such order and decree. Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301; Hancock National Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619; Francis v. Hazlett, 192 Mass. 137, 78 N. E. 405, 116 Am. St. Rep. 230; Goss v. Carter, 156 Fed. 746, 84 C. C. A. 402; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Irvine v. Putnam (C. C.) 167 Fed. 174; Irvine v. Putnam (C. C.) 190 Fed. 321.

The Minnesota statute considered in Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, declared in section 5:

"Said order and the assessment thereby levied shall be conclusive upon and against all parties liable upon or on account of any stock or shares of said corporation, whether appearing or represented at said hearing or having notice thereof or not, as to all matters relating to the amount of and the propriety of and necessity for the said assessment. This provision shall also apply to any subsequent assessment levied by said court as hereinafter provided."

[14] But the above section of the Minnesota statute is unimportant so far as the determination of the force and applicability of Converse v. Hamilton to this case as an authority on the point just discussed is concerned. In the first place, no stress was laid upon it by the court in the decision of the case. Secondly, the court recognized the principle enunciated in Howarth v. Lombard and Bernheimer v. Converse that, as declared in the latter case, the "members of the corporation should be sufficiently represented by the presence of the corporation itself" in the "liquidation of the affairs of the corporation in a proceeding in the State of its origin." And thirdly, section 5 above quoted was only declarative of existing law as stated by the authorities. But non-resident stockholders, not appearing nor served with process in the domiciliary proceedings, would not be precluded from showing in proceedings elsewhere brought against them to enforce payment of the assessment, that they were not stockholders, or not holders of stock in the amount alleged, or that they had claims against the company which at law or in equity they were entitled to set off as against the assessment upon their stock, or that they had any other defence or defences personal to themselves. Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301.

Section 3 of article 13 of the constitution of Ohio relating to double liability of stockholders was amended November 3, 1903, so as to read as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

This amendment was not adopted until after the Marriott and Kinsey petitions had been consolidated. It had for its object, not any mere change or substitution of remedy for the enforcement of the statutory double liability, but the abolition of the liability itself, and could not defeat or affect the consolidated cause. The Supreme Court of Ohio has decided this point not only in the consolidated cause but elsewhere. In Poston v. Hull, 75 Ohio St. 502, 80 N. E. 11, where the action to enforce double liability was brought against a corporation and divers alleged stockholders before the amendment was adopted, the court said:

"To avoid possible misunderstanding it may be added that this controversy, having arisen before the recent amendment to the constitution of the state, which abolishes the double liability of stockholders, is not affected by that amendment."

This statement strictly accords with the doctrine of Ochiltree v. Railroad Co., 88 U. S. (21 Wall.) 249, 22 L. Ed. 546.

That the plaintiff has sufficient title to maintain this action, although in Delaware, whatever may be its final outcome, I think there can be little or no doubt on the authorities. The defendant on this point principally relies on Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. But that case is wholly inapplicable to the facts here disclosed. The Minnesota statute of 1894 there considered neither vested title in the receiver nor expressly or impliedly authorized the appointment of a receiver to sue in other states for the enforcement of the stockholders' double liability. The receiver, though appointed pursuant to the statute, was a chancery receiver with no other power than resulted from his appointment by the court in the exercise of its general jurisdiction in equity. The court said:

"We are of opinion, following the decisions of the highest court of Minnesota, that the statutes of that State do not provide for the appointment of a receiver to recover as such the amount of the added liability of the non-resident shareholders to creditors of an insolvent corporation. They do not provide that such liability shall be assets of the corporation, to be recovered by the receiver and payable to its creditors when such liability is enforced and the money recovered. There is no transfer of any right or title to a receiver to enforce the liability, (certainly not as to non-resident stockholders,) nor is it a case where any assignment of such right by the creditors has been made, so that the receiver is, in fact, an assignee of the persons interested in the recovery from the stockholders. We are thus brought to the fact that this is a plain and simple case of the appointment, authorized by statute, of a receiver by a court of equity in the exercise of its general jurisdiction as such court, with no title to the fund in him, and where such receiver acts simply as the arm of the court without any other right or title, and the question is whether, in these circumstances, a receiver can maintain this suit in equity in a foreign State by virtue of his appointment and the direction to sue contained in the decree in the case in which he was appointed a receiver?"

[15, 16] And it was held that he could not. Whatever significance Hale v. Allinson may have in the consideration of the present case is due to the marked contrast between the nature and functions of

the receiver there and the receiver here; clearly serving to distinguish the two cases from each other in principle. If Irvine were a mere chancery receiver of the railroad company, appointed by the court of common pleas in the exercise of its general jurisdiction in equity, he could not solely in that capacity under any circumstances enforce the double liability of the defendant as a stockholder of that company. But he was more than a mere chancery receiver so appointed. The legislature authorized his appointment by the court as a receiver to sue for and recover both beyond and within the limits of Ohio the amounts due under the double liability of the stockholders, and the court pursuant to such legislative authorization appointed him for that purpose. He possessed the same authority and power as if directly named and appointed by the legislature. But the double liability of the stockholders, unlike unpaid subscriptions for stock and other pecuniary demands of the corporation, is not included among the corporate assets. It is a liability, not to the corporation, but to its creditors, to secure payment of their claims against the corporation. It could not be controlled, released or assigned by the corporation even for the general and equal benefit of its creditors. It runs directly to the creditors and cannot be enforced by the corporation, but only by the creditors or some one representing them. Wright v. McCormack, 17 Ohio St. 87; Umsted v. Buskirk, 17 Ohio St. 114; Hawkins v. Furnace Co., 40 Ohio St. 507; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301. In Wright v. McCormack, where it was held that an attempted assignment of the double liability by a corporation, though for the equal benefit of all its creditors, was void, the court said:

"The liability thus imposed on stockholders is not a primary resource or fund for the payment of the debts of the corporation. It is collateral and conditional to the principal obligation which rests on the corporation, and is to be resorted to by the creditors only in case of the insolvency of the corporation, or where payment cannot be enforced against it by the ordinary process. It is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control."

In Umsted v. Buskirk the court said of the double liability:

"If the corporation has the right to enforce this liability by assessments, it can exhaust it to discharge a present indebtedness, and continue its business with no other security to its future creditors than its corporate liability. This would neither be in accordance with the design of the constitutional provision nor of the statute."

In Goss v. Carter, 156 Fed. 746, 84 C. C. A. 402, the circuit court of appeals for the fifth circuit decided that the double liability was a "trust fund for the benefit of all creditors of the corporation." And the Supreme Court of Ohio has made a similar decision, authoritative in this case. Zieverink v. Kemper, 50 Ohio St. 208, 34 N. E. 250.

By constitutional sanction section 3260 as amended and supplemented up to and including April 16, 1900, expressly empowered the court of common pleas to authorize and direct a receiver, appointed by it, to prosecute actions in his own name as receiver for the enforcement in other jurisdictions of the double liability, and that court pursuant to the power conferred upon it authorized and directed the plain-

tiff so to sue beyond as well as within the limits of Ohio as might be necessary. It is to be assumed that it was the purpose of the legislature and of the court of common pleas to provide an effectual remedy for the enforcement of the double liability in other states and fully to authorize and empower the receiver to accomplish the object contemplated and intended by the constitution and the act passed to give it practical operation and effect, and further, that Elliott through his subscription to the capital stock of the railroad company agreed that the receiver appointed to enforce the double liability against him as a stockholder should have right and title so to do. The double liability constituting a special quasi-trust fund, not for the corporation nor included among its assets, but exclusively for its creditors, a receiver under the legislatively authorized direction of the court for the enforcement of such double liability, whether in Delaware or any other state, acts, not as a naked chancery receiver, but as a representative of the creditors or a quasi-assignee or trustee, and in such capacity has a right or title to sue which must be respected, not only in Ohio, but in any other state. Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Francis v. Hazlett, 192 Mass. 137, 78 N. E. 405, 116 Am. St. Rep. 230: Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301: Goss v. Carter, 156 Fed. 746, 84 C. C. A. 402; Irvine v. Bankard (C. C.) 181 Fed. 206; Bankard v. Irvine, 184 Fed. 986, 106 C. C. A. 664: Irvine v. Putnam (C. C.) 190 Fed. 321: Irvine v. Putnam (C. C.) 167 Fed. 174; Shipman v. Treadwell, 200 N. Y. 472, 93 N. E. 1104.

In Bernheimer v. Converse, supra, it was held that a receiver appointed in Minnesota to enforce the double liability of stockholders of a corporation of that state could maintain an action in New York against stockholders based upon an assessment made against them in the proceedings in Minnesota, although not served with process in that proceeding nor appearing therein. The Minnesota statute of 1899 (Laws 1899, c. 272) under which Bernheimer v. Converse was decided, was, as has been said, essentially different from the statute of 1894 (Gen. St. 1894, c. 76) with which the court dealt in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, but quoad the right of the receiver to sue in other states for the enforcement of the double liability essentially the same as section 3260 of the revised statutes of Ohio, as amended and supplemented on and before April 16, 1900. The Minnesota statute of 1899 directed, among other things, that on the petition of an assignee of a corporation of that state for the benefit of its creditors under its insolvency laws, or of a receiver of the corporation duly appointed under the general equity powers and practice of the court, or pursuant to any statute, or of any creditor who had filed his claim in assignment or receivership proceedings, action might be taken for making an assessment upon the stockholders for the enforcement of their double liability; that the court should "direct the payment of the amount so assessed" to the assignee or receiver within the time specified in its order; that the order should direct the assignee or receiver in default of payment of such assessment to

"prosecute action against each and every such party so failing to pay the same, wherever such party may be found, whether in this state or elsewhere"; and that actions for the amount assessed might be maintained against each stockholder severally in Minnesota or "in any other state or country where such stockholder, or any property subject to attachment, garnishment or other process in an action against such stockholder, may be found." This legislative enactment contained a proviso having no pertinency to the point now under consideration. The Minnesota statute of 1899 did not expressly vest in the assignee in insolvency or the receiver any right or title to the stockholders' double liability nor did it mention the vesting of title in him; and it cannot be assumed, in view of the fact that the double liability runs, not to the corporation, but exclusively to its creditors, that property in it passed to its assignee or receiver as trustee, quasi-assignee or in any other capacity, save in so far as the authority and duty conferred and imposed upon him to collect the quasi-trust fund, consisting of the double liability, constituted him a representative of the creditors as the cestuis que trustent or a quasi-assignee for their benefit. Whatever right or title he possessed to recover the amount of the assessment in other states arose, therefore, not from any express conference of title upon the receiver, but solely from the fact that he was legislatively authorized to recover the quasi-trust fund as the representative of the creditors of the corporation, and precisely this authority was conferred upon Irvine, although in fewer words, under section 3260 as amended and supplemented, by the court of common pleas in the decree of July 17, 1905. The court in Bernheimer v. Converse said:

"It is objected that the receiver cannot bring this action, and Booth v. Clark, 17 How. 322 [15 L. Ed. 164], Hale v. Allinson, 188 U. S. 56 [23 Sup. Ct. 244, 47 L. Ed. 380], and Great Western Mining Co. v. Harris, 198 U. S. 561 [25 Sup. Ct. 770, 49 L. Ed. 1163], are cited and relied upon. But in each and all of these cases it was held that a chancery receiver, having no other authority than that which would arise from his appointment as such, could not maintain an action in another jurisdiction. In this case the statute confers the right upon the receiver, as a quasi assignee, and representative of the creditors, and as such vested with the authority to maintain an action. In such case we think the receiver may sue in a foreign jurisdiction."

In Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, the court had under consideration the Minnesota statute of 1899 above referred to and said:

"Under this statute, as interpreted by the Supreme Court of the State, as also by this court, the receiver is not an ordinary chancery receiver or arm of the court appointing him, but a quasi-assignee and representative of the creditors, and when the order levying the assessment is made he becomes invested with the creditors' rights of action against the stockholders and with full authority to enforce the same in any court of competent jurisdiction in the State or elsewhere. * * * It is true that an ordinary chancery receiver is a mere arm of the court appointing him, invested with no estate in the property committed to his charge, and is clothed with no power to exercise his official duties in other jurisdictions. * * * But here the receiver was not merely an ordinary chancery receiver, but much more. By the proceedings in the sequestration suit, had conformably to the laws of Minnesota, he became a quasi-assignee and representative of the creditors, was invested with their rights of action against the stockholders, and was charged with the enforcement of those rights in the courts of that State

and elsewhere. So, when he invoked the aid of the Wisconsin court the case presented was, in substance, that of a trustee, clothed with adequate title for the occasion, seeking to enforce for the benefit of his cestuis que trustent, a right of action, transitory in character, against one who was liable contractually and severally, if at all."

In Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301, approved by the Supreme Court of the United States, as already stated, the court said with reference to the enforcement of the double liability:

"It has been held that an ordinary appointment as receiver, made in another state will not enable the appointee to sue in this Commonwealth in his own name. * * * In the present case the receiver is called by the court in Washington a quasi assignee for creditors. He is charged with the administration of a trust fund which does not take form or come into actual existence until after his appointment, and he is the only person who can collect it. By virtue of his official relation to the corporation and its creditors he is the owner of the legal title to this fund as a trustee for the creditors. A suit could not have been brought in the name of the corporation, and he is the only person who can now, or who ever could, legally demand and collect the money. We are of opinion that the action is rightly brought in his name."

No importance is attached to the fact that in the decree of the circuit court of Franklin county of December 7, 1907, which subsequently was reversed, it was ordered and adjudged that the plaintiff "be, and he hereby is, invested with the title and ownership in trust for the creditors of said railroad company * * * of the rights of the creditors of said railroad company, against the stockholders * * * including the several sums hereinbefore found due from the stockholders," or to the fact that the decree of the court of common pleas of May 28, 1909, contained a similar provision. Whatever motive may have prompted the making of such a provision it was wholly unnecessary and neither enlarged nor impaired the authority and right of the receiver to maintain suit in other states to enforce the double liability. For the receiver could not act in excess of the power conferred by the legislature upon the court to authorize and direct him "to prosecute such action in his own name as receiver, as may be necessary, in other jurisdictions to collect the amount found due from any officer or stockholder." For the foregoing reasons the demurrer cannot be sustained on the eighth ground, challenging the right of the plaintiff to maintain suit in Delaware to enforce payment of the assessment made against the defendant under his double liability.

[17] The fourth ground of demurrer is to the effect that this action is barred by the Ohio "statute of limitations," because not brought against the defendant "within eighteen months from the accrual of the cause of action mentioned in said declaration"; and the sixth ground is to the effect that the action is barred by the Delaware statute of limitations because "not brought within three years from the accrual of the cause of action against this defendant." But little need be said of the Delaware statute. If under the laws of this state there be any limitation applicable to this action it is to be found in section 6 of chapter 123 of the revised code, providing:

"No action of trespass, no action of replevin, no action of detinue, no action of debt not found upon a record or specialty, no action of account, no action of assumpsit, and no action upon the case shall be brought after the expiration of three years from the accruing of the cause of such action; subject, however," etc.

The omitted qualification has no pertinency here. This is an action of debt, and the above section includes all actions of debt "not found upon a record or specialty." If the action be "found upon a record or specialty" there is no limitation applicable to it; and lapse of time less than a period of twenty years from the accruing of the cause of action, necessary to give rise to a presumption of payment, cannot of itself render the action defeasible. If, on the other hand, the action is not "found upon a record or specialty," but upon an implied contract resulting from the acquisition by Elliott of stock in the railroad company and the double liability he thereby incurred and assumed, the three year limitation is applicable as a pure limitation and nothing else, and under the settled law of this state cannot be taken advantage of by demurrer, but must be pleaded. Parker v. Whitaker, 4 Har. (Del.) 527.

It is claimed in the fourth ground of demurrer that this action is barred because not brought within eighteen months from the accrual of the cause, not of this action, but of the "action mentioned in said declaration." That action was the domiciliary suit in Ohio commenced by the filing of the Marriott and Kinsey petitions in 1899.

Section 3258 of the revised statutes of Ohio which had been in force from 1880 was amended April 29, 1902 (95 Ohio Laws, p. 312) and again April 24, 1904 (97 Ohio Laws, p. 390). By the former amendment the following provision was added:

"Sec. 3258a. An action upon the liability of stockholders can only be brought within eighteen months after the debt or obligation shall become enforceable against stockholders."

And by the later amendment, passed to adapt the legislation on the subject of the double liability to the changed condition of things produced by the constitutional amendment of November 3, 1903, abolishing such liability, a provision to precisely the same effect was added. There has been much contrariety of judicial opinion on the point whether the eighteen months limitation begins to run from the insolvency of an Ohio corporation, barring any domiciliary suit for the enforcement of the double liability not commenced within that period, or, on the other hand, is applicable only to an action brought against a stockholder who has not been served with process nor appeared in the domiciliary suit, barring such action if not brought within eighteen months after the completion of the final assessment against him and the appointment of a receiver. On principle it would seem that the eighteen months should not begin to run until after the making of the final assessment and such appointment. Before section 3260 was so amended and supplemented as to permit the enforcement, by a receiver appointed in the domiciliary proceedings, of such liability against stockholders in other states, the local or domiciliary action was brought by one or more creditors of the insolvent corporation on behalf of

themselves, and all other creditors thereof, against it and all its stock-holders, non-resident as well as resident. The period of limitation applicable to the action was six years from and after the insolvency of the corporation. An assessment under the double liability could be made only in the domiciliary suit, and no judgment or decree to enforce the payment of such assessment against any stockholder could be rendered or made save in that suit. There was no means by which non-resident stockholders of an Ohio corporation could be reached by process beyond the limits of that state, and unless served with process while temporarily there or voluntarily appearing in the domiciliary proceedings no judgment or decree could pass against them for the amount assessed against them in such proceedings. Under these circumstances there could be no reason to cut down the period of limitation for the commencement of the domiciliary action from six years to eighteen months unless on general principles the latter period was deemed preferable to the former.

But after the passage of the amendatory and supplemental act of April 16, 1900, providing means for the enforcement beyond the limits of Ohio of the double liability of the stockholders of Ohio corporations through actions brought by receivers appointed in the domiciliary proceedings, there was the strongest reason for limiting the bringing of such actions to a comparatively short period, to the end that the double liability fund should be promptly realized and distributed equitably and justly among the creditors. Further, it is a significant fact, that if the eighteen months limitation was intended to apply to the domiciliary suit there would have been no period of limitation applicable to a suit for the enforcement of the double liability against non-resident stockholders over whom jurisdiction in personam had not been acquired in the domiciliary proceedings, save the varying periods of limitation provided by the lex fori in the various states in which such suit should be brought. It seems inherently improbable that the legislature of Ohio, in view of the desirability of making prompt distribution among the creditors of the double liability fund, could have intended such a result. Hence, it seems most natural that section 3258a which limits the bringing of an action upon the double liability to the period of eighteen months after the debt or obligation "shall become enforceable against stockholders" should have been intended to apply only to suits brought against stockholders not served with process nor appearing in the domiciliary proceedings.

[18, 19] If, however, the eighteen months limitation was intended to apply only to a domiciliary suit for the enforcement of the double liability, it could have no application to this case; for the domiciliary suit in question was commenced before the enactment of the statute creating the eighteen months limitation, and at the time of such enactment more than eighteen months had elapsed after the insolvency of the railroad company. The contractual liability of Elliott and other stockholders of the railroad company to its creditors through their acquisition of stock had been created and was in full force, and it was not within the power of the legislature of Ohio, under the constitution of the United States, wholly to deprive the creditors of all

remedy for the enforcement of their valid and binding contract with the stockholders. From the fact that the Supreme Court of Ohio expressly declared the validity of the assessment made in the domiciliary suit, it is to be assumed, in the absence of explanation, that it did not regard the eighteen months limitation as applicable to or as barring the proceedings in such suit. And this accords with some of the cases. Irvine v. Putnam (C. C.) 167 Fed. 174. Irvine v. Putnam (C. C.) 190 Fed. 321. If, then, the eighteen months limitation can apply only to a suit or action brought by the receiver against a stockholder not served with process nor appearing in the domiciliary suit, how does the matter stand? It seems clear that on that assumption time cannot begin to run under the eighteen months limitation in favor of a non-resident stockholder, not served with process nor appearing in the domiciliary proceedings, with respect to the commencement of an action brought against him in a state other than Ohio for the collection for what may be due under his double liability, until after a final ascertainment and establishment of the rate of the assessment and the amount apportioned thereunder against him in the domiciliary proceedings and the appointment of a receiver to bring such action. Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Irvine v. Bankard (C. C.) 181 Fed. 206; Goss v. Carter, 156 Fed. 746, 84 C. C. A. 402; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Francis v. Hazlett, 192 Mass. 137, 78 N. E. 405, 116 Am. St. Rep. 230; Irvine v. Putnam (C. C.) 167 Fed. 174; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301; Irvine v. Putnam (C. C.) 190 Fed. 321. Until that time there is no one entitled to maintain such action. The corporation cannot do so, for the double liability does not run to it, nor can such action be maintained by any one or more of the creditors of the corporation, for such statutory liability is a fund for the equal and pro rata benefit of all the creditors and the remedy for its enforcement is conferred upon the receiver exclusively. Nor can it appear before the final establishment in the domiciliary proceedings of the rate of assessment and the amount apportioned thereunder against such stockholder what sum is due and collectible from him under his double liability. Hence, as no action can be maintained in a foreign jurisdiction to enforce an assessment until its rate is established and an apportionment made nor until there is some one entitled to sue for such enforcement, time will not begin to run in favor of the stockholder before such final establishment of rate, such apportionment and a receivership.

[20] The fourth ground of demurrer refers to the provision in question as an Ohio statute of limitations. If it were a limitation solely affecting the remedy it could have no operation in a suit in Delaware even were it set up by plea; for pure limitations are part of the lex fori, and this state has no such limitation. Assuming, however, without deciding the point, that the eighteen months limitation is not confined to the remedy, but qualifies, limits, or conditionally destroys the right, and as such must be recognized by the courts in every state where an action may be brought to enforce the right, it is not perceived how such assumption can enure to the benefit of the de-

fendant here. On the above assumption two questions are presented; the first, relating to the point or stage in the domiciliary proceedings when such statutory period began to run, and the other, to the alleged suspension or interruption of the running of time within that period by reason of exceptions, appeals, etc., delaying the completion of the final assessment.

The first question will briefly be considered at this point. While the Ohio six year limitation was applicable to the bringing of the domiciliary suit, there was no statutory limitation of the duration of the proceedings therein. And from the nature of the proceedings in such a suit there could not be. The time required for making a just and lawful assessment upon the stockholders severally for their respective shares of the amount of the double liability necessary to be collected for the satisfaction of the debts of the corporation is obviously of uncertain duration, involving, as it does, among other things, the ascertainment of the stockholders liable, the number of shares held by them respectively, the amount and validity of the corporate indebtedness, the establishment of the rate of assessment, the hearing and determination of exceptions and appeals, and corrections of erroneous assessments made against individual stockholders. The court in the domiciliary proceedings may and should as far as possible ascertain the exact amount each stockholder should pay and so mould its judgment or decree as to do justice to all parties. Younglove v. Lime Co., 49 Ohio St. 663, 33 N. E. 234. The court of common pleas in the decree of July 17, 1905, recognized that the original assessment or rate of assessment made thereby was not necessarily the final assessment or rate, for it declared:

"All questions and issues which have been or may be raised herein as to who are or may be liable herein as stockholders * * * and which have not been heretofore decided in this case, and all questions as to ownership of stock and liability of stockholders * * * not herein or heretofore in this cause determined by this court, be and they hereby are reserved by this court for its further order, judgment and decree."

And the decree of July 17, 1905, recites many notices of intention to appeal therefrom, contains orders fixing the amount of appeal bonds and particularly states notices from a number of stockholders of intention to appeal from the "finding and judgment of the court fixing the amount to be assessed against each stockholder of said defendant company at 25 per cent. of the par value of the stock held by each of them." And in fact it appears from the admissions of the demurrer that such appeals were taken, perfected and prosecuted, and that certain other appeals in the domiciliary suit touching the rate of assessment, among other things, were not finally disposed of before the decree of the Supreme Court of Ohio of May 11, 1909, which was less than eighteen months before the bringing of this action, October 27, 1910. Until the former date no final and conclusive rate of assessment under the double liability had been made. The assessment was in fieri and had not become "enforceable against stockholders" within the meaning of section 3258a, nor did it become so enforceable until its rate was finally established May 11, 1909. It was not only not incumbent on the plaintiff to bring suit against the

defendant while the assessment was imperfect and in fieri, its rate not having been finally established, but it would have been the height of folly to do so before the Supreme Court of Ohio made its decree of May 11, 1909, after which date no appeals could lawfully be taken from the rate of assessment thereby approved. The unwisdom of prematurely instituting suit against non-resident stockholders for the collection of assessments under the double liability has received practical illustration in an action in this court between these parties for the recovery of the 50% assessment ordered by the circuit court of Franklin county in the decree of December 7, 1907. The action was brought after this decree and before its reversal as to the 50% clause by the Supreme Court of Ohio, resulting in its abandonment and the bringing of this suit. If section 3258a be regarded, not as a pure statutory limitation affecting only the remedy for the enforcement of a right, but as qualifying, restricting, or making conditional the right itself, and forming an essential part of it, it cannot be recognized as a valid enactment when tested by the constitution of the United States; for, after the act of April 16, 1900, the creditors of the railroad company had a vested right to sue in other states through the instrumentality of a receiver for the enforcement of the stockholders' double liability and to maintain such suit, subject only to the limitation provided by the lex fori. Such being the case the legislature · of Ohio · could not, in my opinion, through the section in question, lawfully deprive the creditors of the benefit of that right.

[21] It is urged on the part of the plaintiff that the taking and prosecution of appeals in· the domiciliary suit, whereby he was prevented from prosecuting this· action, until after May 11, 1909, suspended the running of the eighteen months period of limitation or the period of limitation under the Delaware statute, whichever may be applicable to the case. This contention, I think, cannot be sustained for while there is weighty authority in support of it (Braun v. Sauerwein, 77 U. S. 218, 19 L. Ed. 895; Amy v. Watertown, 130 U. S. 320, 9 Sup. Ct. 537, 32 L. Ed. 953), the Supreme Court of Delaware in· Lewis v. Pawnee Bill's, etc., Co., 6 Pennewill (Del.) 316, 66 Atl. 471, 16 Ann. Cas. 903, has declared that, where the legislature has made no exception to the positive terms of a statute of limitations the presumption is that it intended to make none, and it is not within the province of a court to do so, following the declaration of Chief · Justice Marshall in McIver v. Ragan, 2 Wheat. 25, 4 L. Ed. 175, that courts cannot "insert in the statute of limitations an exception which the statute does not contain." On any question touching the construction or operation of a statute of limitations of the State of Delaware, a decision by the Supreme Court of that state is conclusive. Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. Ed. 316. And with respect to the eighteen months period of limitation prescribed by the Ohio statute the contention is equally unavailing.

The vital question is not whether the running of time under the Ohio limitation of eighteen months or the Delaware statute of limitations was suspended by reason of the inability of the plaintiff owing to appeals, etc., in the domiciliary suit to maintain a suit against

Elliott, but whether it was incumbent upon the plaintiff to sue until after the decree of May 11, 1909, by the Supreme Court of Ohio. Until that date no assessment or rate of assessment had been finally and irreversibly established. As the assessment under the statutes of Ohio must be uniform as to all stockholders it is obvious that appeals by an individual stockholder or stockholders, or by a receiver, representing the creditors, may or may not result in increasing or diminishing the rate of assessment necessary under the double liability, thus affecting all the creditors and all the stockholders; and it is wholly unimportant whether an appeal is taken by the receiver, on the one hand, or, on the other, by Elliott or any other stockholder. Until exceptions and appeals and other attacks upon the rate of the initial assessment are finally disposed of, an assessment which will support an action by a receiver against a stockholder in another state is only in fieri and incomplete. The demurrer admits the following allegation in the declaration:

"That all the said appeals and proceedings upon writs of error were taken in due time as required by law, and upon proper bonds being filed as required by law, and as hereinabove referred to; that the effect of said appeals and proceedings on writs of error under and by virtue of the laws of the State of Ohio was to suspend the operation and effect of the said decrees of said court of common pleas; and that under and by virtue of said appeals and proceedings by writ of error as aforesaid, there was no time during which the said Ellsworth C. Irvine could lawfully proceed as such receiver under and by virtue of the decrees of said court of common pleas, to enforce the collection of the amount so assessed against the various stockholders of said company, defendants in said consolidated case, until the passage of said order of said Supreme Court on said date, to wit, May 11, 1909."

[22] While this court takes judicial cognizance of the laws of Ohio it does not take judicial cognizance of what may have been done in the course of the practice and procedure of the courts of that state under its statutes, and consequently the above averments in the declaration are admitted by the demurrer to be true. From these admissions it appears that the assessment against the stockholders under their double liability was not fully completed and established so as to enable the plaintiff to maintain suit thereon against them in other states before May 11, 1909, which date was not only within the Delaware three year period of limitation, but also the Ohio eighteen months limitation. More than eighteen months had expired after the decree of July 17, 1905, and before the decree by the Supreme Court of Ohio May 11, 1909; and if it had been deemed to bar a suit by the receiver against a stockholder in another state brought after the above decree of May 11, 1909, it is somewhat remarkable that the court of common pleas should not have so declared. On the contrary, after the appeals had been disposed of May 11, 1909, the court of common pleas in a further decree May 28, 1909, expressly authorized the receiver to bring suit in other states against stockholders subject to the double liability including Elliott. It cannot reasonably be assumed that it was intended by the legislature of Ohio that the receiver should have a right to sue a stockholder in another state while absolutely prevented from so doing by the practice and procedure

203 F.—8

of the courts of Ohio under the statutes in question. Nothing that has here been stated is intended to convey the idea that before action can be maintained by the receiver against a stockholder resident in another state not served with process nor appearing voluntarily in the domiciliary suit, the assessment against such non-resident stockholder should be conclusive in all respects; for, as has appeared, it is settled doctrine that such non-resident stockholder is not precluded in such action from setting up that he is not a stockholder, or not a stockholder in the amount alleged, or that he has claims against the insolvent corporation which at law or in equity he is entitled to set off against the assessment upon his stock, or that he has any other defence or defences personal to himself. But the final establishment of the rate of assessment is an indispensable condition to the maintenance of such a suit. For without it there is nothing on which suit can be based. From the foregoing considerations it seems to result as a corollary that the cause of action against Elliott did not fully mature before the final establishment of the rate of assessment by the decree of May 11, 1909. Hence the plaintiff is not barred by any statute of limitations from maintaining this action.

In view of the conclusions reached it is not necessary to discuss the first three grounds of demurrer; as the plaintiff is under no obligation to set out in his declaration matters of evidence, on the one hand, or, on the other, to anticipate a supposed defence that possibly may hereafter be presented by plea. It may be added that the right of the plaintiff to maintain this action cannot be affected by any mere non-jurisdictional irregularities or defects in the domiciliary suit. Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163. Such imperfections, if there be any, could be rectified only in the domiciliary suit and cannot collaterally be taken advantage of in this action. On the whole I am satisfied that the demurrer should be overruled and the defendant required to plead.